UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| SANDRA ROBINSON, | ) |
| | ) |
| Plaintiff, | ) |
| | )   3:08-cv-31-WGH-RLY |
| v. | ) |
| | ) |
| WAL-MART STORES EAST, LP, | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**I.   Introduction**

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, on Defendant's Motion for Summary Judgment filed September 10, 2008.[1]  (Docket Nos. 14-16).  Plaintiff filed a Response on December 1, 2008.  (Docket Nos. 25-26).  Defendant filed its Reply Brief on December 22, 2008.  (Docket No. 34).

**II.   Background**

On May 12, 2005, Plaintiff was shopping in the Wal-Mart store in Boonville, Indiana.  (Deposition of Sandra Robinson ("Robinson Dep.") at 17). She stopped at a display of sunglasses and tried on a pair of the glasses.  The

---

[1]On April 15, 2008, the parties consented to Magistrate Judge jurisdiction in this case.  (Docket No. 9).  District Judge Richard L. Young entered an Order of Reference on April 16, 2008.  (Docket No. 10).

display, which Wal-Mart had placed at an endcap, was big and included a mirror. (*Id.* at 26). Plaintiff alleges that as soon as she attempted to put on the sunglasses:

> I didn't even get them like over your ears or anything. I just put them on and it was all of a sudden the pain that went into my eye was almost like somebody shocking you with something.
>
> I didn't know what it was. It was not -- not like a pin, much worse than that. It was -- I don't know how to explain it. Like something burst.

(Plaintiff's Dep. at 18). Plaintiff then noticed blood on her glasses, her face, and the floor. She immediately proceeded toward the front of the store to try to get help. (Plaintiff's Answers to Interrogatories, No. 9; *see also* Robinson Dep. at 18-21, 39-40).

When Plaintiff was asked what actually hit her eye, the following exchange took place:

> Q: Okay. Do you know what -- what hit your eye, what went in your eye?
>
> A: No. It was cone shape or pyramid shape. That's what the optometrist said, . . . .
>
> Q: Do -- do you have any idea . . . what could have poked you in the eye? . . . Was it part . . . of the actual glasses themselves?
>
> A: I -- honest to God, I can't say for a hundred percent sure, but I think it was either the tag -- the cardboard tag that has the little $5 on it, it was here (indicating) -- like on your nose.

(Robinson Dep. at 29-30). Plaintiff further testified that the sunglasses had cardboard attached to them, but that "it would have been impossible for that to

go into my eye." (*Id*. at 31). She also does not believe the nose rests could have damaged her eye. (*Id*. at 32-33). She speculates, "So it may have been, I'm thinking, the thing that held the price tag on . . . ." (*Id*. at 31).

Plaintiff explained that she has tried on many different sunglasses in her life and has never had one hurt her eyes before. (Robinson Dep. at 46-48). Now, she obsessively checks glasses before she or her grandchildren put them on. (*Id*. at 95-97).

After Plaintiff's injury, a Wal-Mart associate noticed that she needed help, and said, "'May I help you, ma'am?'" (Robinson Dep. at 19). The associate walked with Plaintiff to the front of the store and brought the manager. (*Id*.) Plaintiff explained that "they immediately announced for the manager to come to the front." (*Id*. at 37). Additionally, this particular Wal-Mart store contained an eye care center with an optometrist, and the manager instructed an associate to see if the optometrist was in the store that day. (*Id*. at 20). Having discovered that the optometrist was out that day, Plaintiff was taken by an associate to the bathroom where she flushed out her eye with clear water. (*Id*. at 21). Plaintiff was also given a Kleenex. (*Id*. at 40).

Plaintiff then decided that she needed medical attention, and she asked the Wal-Mart employees where she could get an eye doctor. They told her the name of one at Boonville Eye Care. (Robinson Dep. at 21). Plaintiff sought directions, and she was told how to get there. (*Id*.) After being given directions, Plaintiff "knew how to get there right away." (*Id*. at 45). However, Plaintiff

3

lamented that she "should have called one of my family members" to drive her to the eye doctor or "asked one of [the Wal-Mart employees] to drive me or something, but I ended up driving myself." (*Id.* at 21).

Before Plaintiff was able to leave the Wal-Mart, she had to check out and pay for her purchases; three associates bagged her items, she swiped her credit card, and then she got her items in her trunk. (Robinson Dep. at 21-22, 44-45). Although several Wal-Mart employees, including the manager, were aware that Plaintiff was bleeding from her eye because of an injury at the store, no one took her to an emergency room or optometrist. (*Id.* at 18-21).

After reaching the eye doctor's office, it was revealed that the object that struck Plaintiff's eye removed a pyramid-shape chunk of her eye. (Robinson Dep. at 40-42). She alleges that her injury has left her with an eye that causes her significant pain and a cornea that tears. (*Id.* at 54-74, 79-80). Plaintiff alleges that her injury is permanent. (*Id.* at 67-68). Plaintiff claims that the injury is particularly devastating because, prior to the injury, her left eye was her good eye. (*Id.* at 82-84).

Plaintiff filed suit in Warrick Circuit Court against Defendant alleging negligence and seeking damages for the injury to her eye. (*See* Complaint).[2] Plaintiff argues that Wal-Mart negligently failed to warn her of the dangerous condition of the sunglasses. (*Id.*). While not specifically pled in the Complaint, Plaintiff also claims that the failure of Wal-Mart employees to transport her to a

---

[2]The suit was removed to this court by Defendant on March 11, 2008.

medical provider amounted to negligence. (Plaintiff's Response to Defendant's Motion for Summary Judgment at 5). Defendant moved for summary judgment arguing that Plaintiff had failed to demonstrate facts sufficient to support her claim of negligence because Plaintiff had failed to demonstrate that any of Defendant's actions were a breach of any duty owed to Plaintiff. After examining the parties' arguments and the relevant legal authority, the court concludes that Plaintiff has failed to demonstrate that any of Defendant's actions were negligent, and Plaintiff's claim must be dismissed.

### III.  Summary Judgment Standard

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The motion should be granted so long as no rational fact finder could return a verdict in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Thus, a court's ruling on a motion for summary judgment is akin to that of a directed verdict, as the question essentially for the court in both is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. When ruling on the motion, the court must construe the evidence in the light most favorable to the nonmoving party and

draw all reasonable inferences therefrom in that party's favor. *Id.* at 255. If the nonmoving party bears the burden of proof on an issue at trial, that party "must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e); *see also Silk v. City of Chicago,* 194 F.3d 788, 798 (7th Cir. 1999). Lastly, the moving party need not positively disprove the nonmovant's case; rather, it may prevail by establishing the lack of evidentiary support for that case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

## IV. Analysis

Plaintiff alleges in her Complaint that Defendant was negligent in two distinct ways. First, Plaintiff argues that the sunglasses that she alleges injured her eye had some sort of sharp object protruding from them which punctured her eye. Plaintiff alleges that the sunglasses were unreasonably dangerous and that Defendant had a duty to warn her of the condition of the sunglasses. Second, Plaintiff claims that after she was injured, Defendant's employees negligently failed to transport her to a medical provider.

### A. Application of State Substantive Law

This is a suit based on the court's diversity jurisdiction. While a federal court sitting in diversity jurisdiction shall apply its own procedural laws, it must apply the substantive laws of the state in which it sits. *First Nat. Bank and Trust Corp. v. American Eurocopter Corp.,* 378 F.3d 682, 689 (7th Cir. 2004). This court must, therefore, apply Indiana substantive law.

### B.     Plaintiff's Negligence Claim

Defendant argues that it was not negligent because it had no duty to warn Plaintiff of the condition of the sunglasses. In Indiana, the tort of negligence consists of three elements: (1) a duty that the defendant owes to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff that is caused by defendant's breach. *Rhodes v. Wright,* 805 N.E.2d 382, 385 (Ind. 2004)(citations omitted). The burden of proof in a negligence action is on the Plaintiff. *Hi-Speed Auto Wash, Inc. v. Simeri,* 346 N.E.2d 607, 608 (Ind.Ct.App. 1976). Furthermore, "[n]egligence will not be inferred; rather, specific factual evidence, or reasonable inferences that might be drawn therefrom, on *each element* must be designated to the trial court." *Hayden v. Paragon Steakhouse,* 731 N.E.2d 456, 458 (Ind.Ct.App. 2000)(emphasis in original). An inference is not reasonable when it simply relies on mere speculation or conjecture. *Id.*

The only relevant issue for the purposes of this claim is whether Defendant owed Plaintiff any duty. "Absent a duty, there can be no breach and, therefore, no recovery in negligence." *Merchants Nat. Bank v. Simrell's Sports Bar & Grill, Inc.,* 741 N.E.2d 383, 386 (Ind.Ct.App. 2000). Whether or not Defendant owed a duty is a question of law for the court to determine. *Rawls v. Marsh Supermarket, Inc.,* 802 N.E.2d 457, 459 (Ind.Ct.App. 2004). It is important to note that "[c]ourts will generally find a duty where reasonable persons would recognize and agree that it exists." *Estate of Heck ex rel. Heck v. Stoffer,* 786 N.E.2d 265, 268 (Ind. 2003). A duty may be created in one of three ways: by

7

statute, at common law, or through a gratuitous or voluntary assumption of the duty. *Holtz v. J.J.B. Hilliard W.L. Lyons, Inc.,* 185 F.3d 732, 740 (7th Cir. 1999). In this case, Plaintiff alleges that, as a business invitee, she was owed a common law duty by Defendant.

In Indiana, a business owner has a duty to exercise reasonable care for the protection of its business invitees. *Burrell v. Meads,* 569 N.E.2d 637, 639 (Ind. 1991). The Indiana Supreme Court, adopting the Restatement (Second) of Torts, has defined a landowner's duty to an invitee as follows:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a)  knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b)  should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c)  fails to exercise reasonable care to protect them against the danger.

*Id.* at 639-40 (quoting Restatement (Second) of Torts § 343 (1965)). While a business invitor is not the insurer of its invitees' safety, "[t]he invitor has a duty to exercise reasonable care to discover defects or dangerous conditions on the premises, and he will be charged with knowledge of, and held liable for injuries which result from, any dangerous condition which he could have discovered in the exercise of reasonable care." *Lutheran Hosp. of Indiana, Inc. v. Blaser,* 634 N.E.2d 864, 869 (Ind.Ct.App. 1994).

Under the circumstances present in this case, the court can find no facts which evidence a duty on the part of Wal-Mart to protect its business invitees such as Plaintiff from this type of injury. Plaintiff cannot exactly say what portion of the sunglasses, or the price tag attached to them, struck her eye. Without evidence of **how** her eye was injured, Plaintiff cannot meet her burden of demonstrating that Defendant should have known that the sunglasses presented an unreasonable risk of harm to her. A jury, in this case, would only be able to speculate as to what caused Plaintiff's injury, and such speculation is not permitted because negligence cannot be inferred. Additionally, even if the sunglasses could be described as dangerous, Plaintiff has failed to present any evidence which demonstrates that Defendant should have known that Plaintiff would not have realized or discovered the dangerous condition of the sunglasses. It was reasonable for Defendant to expect Plaintiff to examine the sunglasses before putting them on. Plaintiff also argues that, because this was a "self-service" display, Wal-Mart had a heightened duty to inspect the sunglasses for defects before customers were able to try them on. However, this court is not aware of any Indiana case law or statute that imposes a heightened duty to inspect or warn, and there is no evidence of any "unreasonably dangerous condition" that existed or that Wal-Mart should have known to be present from which a duty to warn can be inferred. Because Defendant owed no duty to Plaintiff under these circumstances, Plaintiff's negligence claim must be **DISMISSED.**

### C. Plaintiff's Claim of Negligence for Failure to Render Assistance

Defendant also seeks summary judgment on Plaintiff's claim that Wal-Mart employees were negligent when they failed to transport her to a medical provider after she was injured by the sunglasses. Wal-Mart does have a duty, as a business that invites members of the public onto its premises, to provide reasonable assistance to those individuals when they become ill or injured. *Baker v. Fenneman & Brown Properties, LLC,* 793 N.E.2d 1203, 1210 (Ind.Ct.App. 2003). However, Plaintiff must prove each of the three elements in order to demonstrate negligence: duty, breach, and an injury which is caused by Defendant's breach. And, in order to sustain a negligence claim against a business invitor, such as Wal-Mart, for failure to render aid, Plaintiff must demonstrate that Wal-Mart's actions aggravated her condition or caused additional injury beyond that she initially sustained from the sunglasses. *Id.*; *see also Trask-Morton v. Motel 6 Operating L.P.,* 534 F.3d 672, 680-81 (7th Cir. 2008).

Here, Plaintiff admits in her deposition testimony that Wal-Mart employees were relatively helpful after she was injured; they tried to locate the in-house optometrist, they accompanied her to the restroom, and they located a nearby optometrist for her. Additionally, Plaintiff has not pointed to any evidence to demonstrate that her injury was exacerbated by the actions of Wal-Mart employees. Nor has Plaintiff provided expert testimony to support her claim that calling an ambulance or transporting Plaintiff to an optometrist would have

10

lessened her injury.  Hence, there is no evidence that Plaintiff suffered any damages as a result of Defendant's actions.  Absent such evidence, Plaintiff has failed to carry her burden of proffering facts to support her negligence claim, and Defendant is entitled to summary judgment on this issue.  Plaintiff's claim that Defendant was negligent for failing to render assistance is **DISMISSED.**[3]

## V.     Conclusion

Plaintiff has sustained a most unfortunate injury in this case.  However, she is unable to demonstrate what mechanism caused the injury to occur.  A jury would be unable to reach a verdict in this case based on the evidence now before the court.  A verdict of liability cannot be based solely on the speculation that something unusual must have been present with this particular pair of sunglasses, and Wal-Mart surely must have known of the defect.

---

[3]Plaintiff also argued in her Response to Defendant's Motion for Summary Judgment that Defendant was liable for a dangerous condition on the sunglasses because Defendant manufactured the sunglasses.  Plaintiff, however, has not presented any admissible evidence to support her claim.  First, Plaintiff has not presented the sunglasses that allegedly damaged her eye.  There, is, therefore, no evidence that these were Faded Glory sunglasses.  Second, Plaintiff has presented no admissible evidence to suggest that Wal-Mart, the only named defendant in this lawsuit, manufactures Faded Glory sunglasses.  Third, Plaintiff's Complaint does not include a products liability cause of action.  Without Plaintiff pleading a products liability cause of action, and without any evidence that Plaintiff was injured by sunglasses manufactured by Wal-Mart, Defendant's liability is limited to that of a business invitor.

For the reasons outlined above, Defendant's motion for summary judgment is **GRANTED**.  Plaintiff's Complaint is, therefore, **DISMISSED**.  Plaintiff's Motion to Request Oral Argument (Docket No. 27) is **DENIED.**

**IT IS SO ORDERED**.

**Dated:**  January 20, 2009

_____
WILLIAM G. HUSSMANN, JR.
Magistrate Judge

**Electronic copies to:**

Thomas L. Davis
FROST BROWN TODD LLC
tdavis@fbtlaw.com

Darlene Carole Robinson
ROBINSON & ASSOCIATES
office@olearylaw.net